AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Black LOJACK Style Tracking Device (0D4CA2d)
Seizure No. 20262504000158101-0006

Case No. 26mj6807

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-2

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 952, 960, 963 | Importation of Controlled Substance, Conspiracy |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* __________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Jose Belleza, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 11/13/2026

[signature]
*Judge's signature*

City and state: San Diego, CA

Hon. David D. Leshner, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Special Agent Jose Belleza, being duly sworn, hereby state as follows:

**A. <u>INTRODUCTION</u>**

1. I submit this affidavit in support of an application for a warrant to search the following Global Positioning System ("GPS") devices:

Black GPS Tracking Device (VL103 LTE Tracker and SIM)
Seizure No. 20262504000158101-0005
("**Subject Device 1**")
And
Black LOJACK Style Tracking Device (0D4CA2d)
Seizure No. 20262504000158101-0006
("**Subject Device 2**")

collectively the ("**Subject Devices**") as further described in Attachments A-1 and A-2, for subscriber information and global positioning system location data from **June 1, 2026**, to **June 24, 2026**. There is probable cause that these records and information constitute evidence of violations of federal criminal law, to wit, Title 21, United States Code, Sections 952, 960, 963 as described in Attachment B. This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure. The requested warrant relates to the investigation and prosecution of Sebastian JAIME Arellano ("JAIME") for importing approximately 41.24 kilograms (90.92 pounds) of cocaine from Mexico into the United States. The **Subject Devices** are currently in the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

**B. <u>BACKGROUND</u>**

2. I have been employed as a Special Agent with Homeland Security Investigations ("HSI") since May of 2025. I am currently assigned to the HSI office of the Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

3. During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

4. As an HSI Special Agent, I graduated from the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia in January 2025. At FLETC, my training included a wide range of subject areas such as narcotics trafficking, money laundering, and firearms trafficking among others. Since graduating, I have participated in and conducted investigations of violations of various state and federal criminal laws, including unlawful possession with intent to distribute controlled substances, distribution of controlled substances, use of communication facilities to commit narcotics offenses, importation of controlled substances, conspiracy to import, possess, and distribute controlled substances. These investigations resulted in arrests of individuals who imported, smuggled, received, and distributed controlled substances, including cocaine, heroin, methamphetamine, and marijuana. These investigations also resulted in arrests of individuals involved in smuggling bulk U.S. currency from the United States to Mexico and from Mexico into the United States. Through these investigations, my experience, and training, as well as discussing the methods and practices of narcotics traffickers with numerous law enforcement officers and confidential sources, I have become familiar with the operations of drug trafficking organizations in the United States and Mexico.

5. Based on my training, experience, debriefs with drug traffickers at multiple levels of drug trafficking organizations, and conversations with experienced investigators, I am aware that a common tactic utilized by drug traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro

Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of controlled substances in vehicles, I am aware that traffickers in Mexico frequently utilize multiple vehicles to transport controlled substances from their origination in Mexico to their final destination in the United States. Oftentimes traffickers transport the controlled substances to a location near the international border in Mexico and then transfer them into a vehicle for crossing into the United States. Once inside the United States these vehicles can sometimes stop just over the border to transfer the controlled substances to another vehicle, or they can drive further into the interior of the United States prior to unloading them. Drug traffickers will use the same vehicle and driver on multiple occasions if they are successful in crossing controlled substances on the first occasion.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in controlled substances trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that vehicle GPS tracking devices receive microwave signals emitted by satellites in earth's orbit as part of the Global Navigation Satellite System network. The tracking device is able to determine its location based on the signals it receives from the Satellites. For tracking devices located in vehicles, I am aware that trackers are able to gather information about a vehicle's speed, location, idle time, and additional diagnostics. The tracker then transmits all the data back to the computer servers maintained by the company servicing the tracker. The tracking device location can be determined anywhere on earth and reflects its location utilizing latitude and longitude measurements. Depending upon the number of satellites that connect to the device and the design of a particular tracker, the location can be accurately determined within meters. The companies that provide GPS tracker services may maintain accounts for individuals utilizing the trackers. They maintain account information that can include the account holder's name, address, email, and phone numbers. The accounts can also maintain the location data for trackers during the tracker's period of activation. I am also aware that the customers using the devices are then able to access the location data utilizing applications on their computer, cellphone, or other mobile device. Searches of tracker

accounts associated with the importation of controlled substances may yield evidence

a. tending to indicate patterns of drug importation from Mexico into the United States to include locations, dates, and times;

b. tending to identify the location of drug stash houses in both Mexico and the United States;

c. tending to identify the location where drugs are loaded into vehicles in Mexico as well as locations where the drugs are unloaded once the importation of drugs from Mexico into the United States is complete;

d. tending to identify the user of, or persons with control over or access to, the vehicle used for importation of controlled substances;

e. tending to identify the routes taken to successfully cross drugs and further transport them into the interior of the United States;

f. tending to identify co-conspirators involved in the importation of controlled substances through subscriber information;

g. tending to identify the user, subscriber, or purchaser of, or persons with control over or access to, the **Subject Devices**; and

h. tending to indicate the duration of use of the **Subject Devices**

7. The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. The dates, times, and amounts are approximate.

## C. FACTS SUPPORTING PROBABLE CAUSE

8. On June 24, 2026, at approximately 7:05 PM, Sebastian JAIME Arellano, ("JAIME"), a United States citizen, applied for entry into the United States from Mexico through the San Ysidro POE in vehicle lane #10. JAIME was the driver, sole occupant, and registered owner of a 2013 Volkswagen Passat ("the vehicle") bearing California license plates.

9. A Customs and Border Protection Officer received two negative Customs declarations from JAIME. JAIME stated he was crossing the border to go to La Mesa, California. The CBPO received a computer-generated alert to refer JAIME and his vehicle for further inspection. The vehicle was referred for further inspection.

10. A CBPO operating the Z-Portal X-Ray machine detected an anomaly / a non-factory compartment in the front bumper of the vehicle.

11. A Canine Enforcement Team was conducting secondary inspection operations when the Human and Narcotic Detection Dog alerted to the rear seat of the vehicle.

12. Further inspection of the vehicle resulted in the discovery of 25 packages concealed in a non-factory compartment behind the rear seats, with a total approximate weight of 41.24 kgs (90.92 lbs.). A sample of the substance contained within the packages field tested positive for the characteristics of cocaine.

13. During a post-Miranda interview, JAIME denied knowledge that the narcotics were in the vehicle. JAIME stated that he was going to San Ysidro to pick up a client. JAIME stated that he was working as a chauffeur and was going to take his client to wherever she needed to go.

14. JAIME was arrested and charged with a violation of Title 21, United States Code, Sections 952 and 960, importation of a controlled substance.

***Vehicle Viewings on September 14, 2026***

15. On September 14, 2026, automotive experts conducted an inspection of the vehicle in the presence of HSI Special Agent Jose Belleza. During the inspection, the automotive experts found **Subject Device 1**, in the rear, passenger-side quarter panel. **Subject Device 2** was found in the rear, left-side quarter panel. Both **Subject Devices** were seized on this day.

16. Based on my training and experience, and my consultation with other law enforcement officers who have analyzed GPS tracking devices, I believe the **Subject Devices** may contain SD, SIM, or other memory cards that may contain subscribers' contact and billing information and detailed information concerning the subscriber's tracker location based on GPS tracking signals (such as latitude and longitude data) associated with the individual tracking device.

17. In light of the above facts and my experience and training, there is probable cause to believe that the **Subject Devices** contains information associated with the movement of the vehicle involved in the smuggling in both the United States and Mexico. Further, in my training and experience, drug traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. It is unknown how long JAIME was involved in importing controlled substances. Coordinators of drug importation events may use the same driver on multiple occasions, and they may have the driver travel back and forth across the border to develop a normal crossing pattern. Based on my review of TECS border crossing records, JAIME crossed into the United States using the vehicle approximately three (3) times in the six months preceding his arrest, including approximately three (3) times in the eight-day period immediately beforehand. Accordingly, I request permission to search the **Subject Devices** for data beginning on **June 10, 2026**, to **June 24, 2026.**

**D. METHODOLOGY**

18. It is not possible to determine, merely by knowing the GPS device's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Many GPS tracking devices store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some GPS tracking device models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the tracking device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the **Subject Devices** and subject it to analysis. All forensic analysis of the data contained within the **Subject Devices** and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**E. PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

22. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

**F. CONCLUSION**

23. Based on the foregoing, I request that the Court issue the proposed search warrant for the **Subject Devices**, pursuant to Federal Rule of Criminal Procedure 41. Based upon my training and experience, consultation with other law enforcement officers experienced in controlled substances importation investigations, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Subject Devices**, as described in Attachments A-1 and A-2, will contain evidence of the importation of controlled substances, as set forth in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Jose Belleza
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 13th day of November, 2026.

Honorable David D. Leshner
United States Magistrate Judge

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The property to be searched is the Black LOJACK Style Tracking Device (0D4CA2d) seized under Seizure No. 20262504000158101-0006 that was found on September 14, 2026, in the vehicle driven by JAIME on June 24, 2026.

**Subject Device 2** is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.





# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the **Subject Device 2** described in Attachment A-2 includes the search of disks, memory cards, SIM cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Subject Device 2** for evidence described below, between the dates of **June 10, 2026** to **June 24, 2026**. The seizure and search of the **Subject Device 2** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the GPS tracking devices will be electronic records, subscriber information, and location data, for the period of **June 10, 2026**, to **June 24, 2026**:

a. tending to indicate patterns of drug importation from Mexico into the United States to include locations, dates, and times;

b. tending to identify the location of drug stash houses in both Mexico and the United States;

c. tending to identify the location where drugs are loaded into vehicles in Mexico as well as locations where the drugs are unloaded once the importation of drugs from Mexico into the United States is complete;

d. tending to identify the user of, or persons with control over or access to, the vehicle used for importation of controlled substances;

e. tending to identify the routes taken to successfully cross drugs and further transport them into the interior of the United States;

f. tending to identify co-conspirators involved in the importation of controlled substances through subscriber information;

g. tending to identify the user, subscriber, or purchaser of, or persons with control over or access to, the Subject Device; and

h. tending to indicate the duration of use of the Subject Device.

which are evidence of violations of Title 21, United States Code, Sections 952, 960 (importation of controlled substances) and 963 (conspiracy).